## CLEVELAND v. CROMWELL.

(Supreme Court, Appellate Division, Second Department.    October 22, 1908.)

ATTORNEY AND CLIENT—LIABILITIES OF ATTORNEY—ACTIONS FOR NEGLIGENCE—EVIDENCE—SUFFICIENCY.

In an action by client against an attorney for negligence in failing to examine an indictment against the client and not making a proper defense, the weight of evidence *held* to show that defendant performed all the services expected of him and was not negligent as charged, so that a verdict for plaintiff should be set aside.

Appeal from Trial Term, Kings County.

Action by Wilson A. Cleveland against George Cromwell. From a judgment for plaintiff, and an order denying a motion for new trial, defendant appeals. Reversed, and new trial granted.

See, also, 110 App. Div. 82, 96 N. Y. Supp. 475.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and MILLER, JJ.

Warren C. Van Slyke, for appellant.

George W. Miller, for respondent.

MILLER, J. While the case presented a question for the jury (Cleveland v. Cromwell, 110 App. Div. 82, 96 N. Y. Supp. 475), I think that the preponderance of the evidence supports the view that the defendant merely undertook, as the plaintiff's friend, to extricate him from his difficulties by effecting a compromise; that the defendant was employed, if at all, to do precisely what he did do; and that he was not expected to examine the indictment, to advise the plaintiff of his legal rights, or to conduct his defense in case the effort to compromise failed. When the plaintiff was arrested he employed another lawyer, and after an examination before the committing magistrate he was held for the grand jury. An indictment was found against him on the 7th day of December, 1906, to which he pleaded not guilty. Two or three days before his case was to be called for trial, in June, 1897, he was notified by the district attorney to appear. His lawyer required a fee of $250, which he could not pay. In that situation he went to the defendant, his personal and political friend, whose practice had theretofore been confined to admiralty law. I quote from the plaintiff's testimony respecting his first conversation with the defendant the following:

"I said that I failed to see anything criminal in the matter, but still there might be some technical point which I did not understand. I stated that the lawyer that I had before the justice of the peace wanted to charge me $250 to defend me, and I thought that was too much. I said that if I had to spend that amount of money, or was to spend that amount of money, I would prefer to give it back to Mr. Stanley, if by so doing it could settle the whole matter. I said that I had had his money in good faith, and that I preferred that he should have it back to spending it fighting him in the law; that I did not

know whether it was too late for that or not, but that I felt he should know and understand the matter."

It was arranged that the plaintiff should see the complainant and effect a compromise, or, if his effort failed, that he should bring the complainant to see the defendant. A compromise was effected by the payment of $60, of which the defendant and another of plaintiff's friends each contributed $30, and it is undisputed that the defendant was never repaid said sum and that he never received anything whatever for his services. On the day when the case was to be called for trial the plaintiff appeared in court, without any witnesses and without the documentary evidence which he says he relied upon to establish his defense. While the plaintiff does testify that he employed the defendant to defend him, and that the defendant agreed to wait until he could pay him for his services, I think it is plain that a defense, either on the law or on the facts, was not contemplated, much less wanted, by the plaintiff. Having satisfied the complainant, the plaintiff expected the defendant to persuade the district attorney and the court to dispose of the indictment without a trial, and he did not expect him to examine the indictment to discover if there were flaws in it. At the stage in which the defendant was called into the case, and in view of what he was expected to accomplish, he had a right to take it for granted that the indictment had already been examined by the plaintiff's lawyer. He persuaded the district attorney to accept a plea of guilty of the crime of petit larceny and the court to suspend sentence. I think it is plain, that that is all the plaintiff even hoped he would be able to accomplish.

While there is evidence in the record which may tend to support a different view, it seems to me that the evidence so preponderates in support of the view hereinbefore indicated that it would be unjust to allow this verdict to stand, and I vote to set it aside as against the weight of evidence, and to grant a new trial upon the usual terms.

WOODWARD, JENKS, and GAYNOR, JJ., concur.

HOOKER, J. (concurring). The action is for malpractice, client against attorney, in that the latter negligently conducted his case. The plaintiff has had a verdict of the jury, and from the judgment entered thereon the defendant appeals. The judgment should be reversed on the ground that the negligence of the attorney was not the proximate cause of the damages plaintiff sustained.

Plaintiff was indicted for grand larceny in the second degree, and, as the jury found, retained the defendant as his attorney. The facts stated in the indictment, however, showed, in the first place, that the crime alleged was petit larceny, rather than grand larceny, and, in the second place, that the statute of limitations had, at the time the indictment was found, run against the misdemeanor. When the plaintiff's case was called in the criminal court, the defendant, instead of moving to dismiss the indictment for the defects apparent on the face thereof, arranged to reimburse the prosecuting witness for his alleged financial loss, and, after a conference with the district attorney, arranged to have the plaintiff plead guilty to petit larceny, sentence

to be suspended. The former plea of not guilty was consequently withdrawn, and, upon the advice of this defendant, the plaintiff plead guilty to the lesser charge, the court adopted the suggestion of the district attorney, and sentence was suspended. About six months thereafter the plaintiff was indicted on another charge, and upon being brought into court upon a bench warrant he was sentenced to one year in the penitentiary upon his former plea of guilty. He remained in the penitentiary between three and four months, when he was discharged on a writ of habeas corpus on the ground that the indictment was void; and it is for the damages he sustained by reason of the incarceration that the plaintiff brings this action.

Even if it be granted that the defendant was guilty of negligence in advising the plaintiff to plead guilty to the first indictment, yet that negligence is hardly the proximate cause of the plaintiff's damage. The defendant had nothing to do with the proceedings had under the second indictment. The possibility of the plaintiff's imprisonment upon his plea of guilty was uncertain and indefinite. The district attorney, testifying upon the trial of this case, stated that he certainly would not have moved for sentence under the first indictment if it had not been for the second offense with which he was charged; and such is the only reasonable inference to be drawn from all of the evidence. While courts may imprison those upon whom sentence has been suspended in certain cases and within certain periods of time upon showing of misconduct, the likelihood of the perpetration of such misconduct is, in a case of this sort, so vague and uncertain as fully to dispel the idea of any necessary connection between the advice of the defendant to plead guilty and the plaintiff's later imprisonment. This is not the case where, a cause being given, the effect must follow, which is proximate cause. Here there was a distinct and independent circumstance, not only wholly without the volition of the defendant, but hardly to be anticipated by the plaintiff at the time he pleaded guilty, which, happening, made the result possible; and in the ordinary conduct of men's affairs this circumstance was so unlikely to intervene that by no process of reasoning could it be looked upon as a necessary sequence to the plea of guilty. See Laidlaw v. Sage, 158 N. Y. 73, 52 N. E. 679, 44 L. R. A. 216.

My conclusion is that it must be held in this case that the damage which the plaintiff suffered, although grievous in its character, was not the natural, logical, and proximate result of any negligence of which the defendant might have been guilty; and hence the judgment should be reversed, and a new trial granted, costs to abide the event.

JENKS, J., concurs with HOOKER, J.